IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMUEL TROICE, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-1274-N |
| | § | |
| WILLIS OF COLORADO INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

This Order addresses Defendant Amy Baranoucky's motion to dismiss for lack of personal jurisdiction [37]; Defendants Willis of Colorado, Inc. and Willis Limited's (collectively, "Willis") motion to dismiss [123]; Willis's supplemental motion to dismiss [197]; Defendant Bowen, Miclette & Britt Inc.'s ("BMB") motion to dismiss and motion to stay [127]; and Defendant Robert S. Winter's motion to join BMB's motion to dismiss [124].[1]  The Court grants in part and denies in part Defendants' motions.

## I. THE NATURE OF THE ACTION

This case relates to the Securities and Exchange Commission's ongoing securities fraud action against R. Allen Stanford, his associates, and various entities under Stanford's control (collectively, "Stanford").  Plaintiffs are individual and corporate investors who held certificates of deposit ("CDs") issued by Stanford International Bank ("SIBL").  Plaintiffs bring claims individually and additionally seek to certify a class of similarly situated

---

[1]The Court grants Winter's motion to join BMB's motion to dismiss.

investors.  Defendants are former insurance brokers for the Stanford entities who allegedly provided "safety and soundness letters" that vouched for the security of Stanford CDs.

Plaintiffs seek recovery on behalf of a class under the following theories: (1) sale of securities through untruth or omission in violation of the Texas Securities Act, TEX. REV. CIV. ST. ANN. art. 581-1 *et seq.* ("TSA"); (2) aiding and abetting violations of the TSA; (3) participation in a fraudulent scheme; and (4) civil conspiracy.  Plaintiffs Troice, Diaz, Punga, Canabal, Ferreiro, and Promotora in their individual capacities seek recovery under the following theories: (1) various violations of the Texas Insurance Code (the "Insurance Code"); (2) common law fraud; (3) negligent misrepresentation; (4) negligence/gross negligence; and (5) negligent retention/negligent supervision.

The facts supporting Plaintiffs' claims are complex.  At root, Plaintiffs allege that the broker Defendants and their employees participated in and contributed to the Stanford Ponzi scheme by knowingly providing misleading "safety and soundness" letters attesting to Stanford's insurance coverage, which Defendants knew would be distributed to Stanford's investors.  Plaintiffs allege the success of the Stanford Ponzi scheme was predicated on the deceptive use of insurance coverage to market the Stanford CDs and that, at the very least, Defendants were aware that their safety and soundness letters were being used improperly, yet continued to provide them.  Defendants assert a number of arguments for dismissal based on personal jurisdiction, standing, *in pari delicto*, the statute of limitations, and general failure to meet the pleading requirements of Federal Rules 9(b) and 12(b)(6).

## II. BARANOUCKY'S RULE 12(B)(2) MOTION

### A. The Legal Standard

A nonresident defendant is subject to the jurisdiction of a federal court sitting in diversity if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) exercise of personal jurisdiction by the forum state is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). The Texas long-arm statute confers jurisdiction to the limits of the Constitution. *See id.*; *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984). The Court, therefore, need concern itself only with the federal due process inquiry. *See Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992) (citations omitted).

The Due Process Clause of the Fourteenth Amendment limits the reach of a state court's – and thus a federal court's – jurisdiction over a nonresident defendant. *See Shaffer v. Heitner*, 433 U.S. 186, 207 (1977). Specifically, due process requires that two elements be satisfied. First, the nonresident must have purposefully established "minimum contacts" in the forum state such that she should reasonably anticipate being haled into court in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). Second, the exercise of personal jurisdiction must "comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). The minimum

contacts analysis required by due process ensures that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Id.* at 472.

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Specific jurisdiction exists if (1) the cause of action is related to, or arises from, the defendant's contacts with the forum, and (2) those contacts meet the due process standard. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). General jurisdiction, on the other hand, exists where the claim is unrelated to the nonresident's contacts with the forum, but where those contacts are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984) (citations omitted). Under either a general or specific jurisdiction analysis, however, "[t]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Stuart v. Spademan*, 772 F.2d 1185, 1191 (5th Cir. 1985) (quoting *Burger King*, 471 U.S. at 474).

Minimum contacts are not enough by themselves to establish jurisdiction. Rather, a defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe*, 326 U.S. at 319). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Stuart*, 772 F. 2d at 1191(quoting *Burger King*, 471 U.S. at 475).

A court must consider the totality of the circumstances of a case when making the purposeful availment inquiry, as "no single factor, particularly the number of contacts, is determinative." *Id.* at 1192. "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982).

Plaintiffs, as the parties seeking to invoke the Court's power, bear the burden of establishing the Court's jurisdiction over Baranoucky. *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012) (citing cases). If a district court, as here, decides a motion to dismiss without holding an evidentiary hearing, a prima facie case suffices to establish jurisdiction. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). A court must take uncontroverted allegations in the complaint as true, and it must resolve all factual conflicts in favor of the plaintiff. *Pervasive Software*, 688 F.3d 214 at 220 (citing *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)). In deciding the motion, a court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (citing *Thompson*, 755 F.2d at 1165).

### B. The Court Has Specific Personal Jurisdiction Over Baranoucky

#### 1. Baranoucky Has Sufficient Minimum Contacts with Texas. – Plaintiffs allege

Baranoucky had the following contacts with Texas:

> (1) Baranoucky is a registered insurance broker with the Texas State Board of Insurance, Third Am. Compl. ("TAC") ¶ 17;

> (2) Baranoucky prepared, executed, and mailed the allegedly fraudulent safety and soundness letters to Stanford Financial in Houston, *see id.* ¶¶ 64, 85, 88;

> (3) Baranoucky regularly traveled to Houston, including to attend quarterly meetings of the Stanford Financial Insurance Committee, *id.* ¶ 74.

In addition, Plaintiffs allege Baranoucky knew or acted recklessly with regard to the fact that the letters were fraudulent. *Id.* ¶¶ 73, 92. These are sufficient allegations to satisfy the minimum contacts requirement. *See Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 794 (5th Cir. 2007) (finding sufficient minimum contacts where defendant allegedly directed misleading marketing materials into Texas, and injuries arose from those materials).

Baranoucky argues that under the fiduciary shield doctrine, these contacts should not be considered in conducting the personal jurisdiction analysis. The fiduciary shield doctrine "holds that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation . . . ." *Stuart*, 772 F.2d at 1197. Thus, in the Fifth Circuit, "the general rule is that jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation . . . ." *Id.* "The fiduciary shield doctrine is based on 'the notion that it is unfair to force an individual to defend a suit brought against him personally

in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.'" *Saktides v. Cooper*, 742 F. Supp. 382, 385 (W.D. Tex. 1990) (citing *Marine Midland Bank v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981)).

However, there are two exceptions to the fiduciary shield doctrine. The fiduciary shield doctrine does not insulate a corporate agent from personal jurisdiction where (1) the corporation is the alter ego of the individual, *Stuart*, 772 F.2d at 1197, or where (2) the individual allegedly committed an intentional tort directed at the forum state, *see, e.g.*, *Intermed Labs., Inc. v. Perbadana Geta Felda*, 898 F. Supp. 417, 420 (E.D. Tex. 1995) (citing *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546–47 (5th Cir. 1985)); *see also Gen. Retail Servs.*, 255 F. App'x at 794–95 (holding the fiduciary shield doctrine does not preclude personal jurisdiction over a corporate actor where tortious conduct is alleged against actor as an individual); *Powerhouse Prods. Inc. v. Widgery*, 564 F. Supp. 2d 672, 678 (E.D. Tex. 2008) (holding the fiduciary shield doctrine inapplicable to corporate officer where plaintiffs alleged tortious conduct against him personally). Plaintiffs do not allege Willis is Baranoucky's alter ego, so the Court considers only the applicability of the second exception.

Plaintiffs' fraud-based claims against Baranoucky preclude her use of the fiduciary shield. *See Fairchild v. Barot*, 946 F. Supp. 2d 573, 581 (N.D. Tex. 2013) (holding that fiduciary-shield did not prevent personal jurisdiction over defendant accused of fraud and unjust enrichment); *Optimum Return LLC v. CyberKatz Consulting, Inc.*, 2004 WL 827835, at *3 (N.D. Tex. 2004) (holding the fiduciary shield does not apply "to corporate officers

who, in their roles as corporate agents, injure persons by 'tortious activity even if such acts were performed within the scope of their employment as corporate officers.'" (citing *Stuart*, 772 F.3d at 1197)).  Baranoucky cites to four cases in an attempt to narrow the scope of this exception to the shield, none of which is availing.

Baranoucky relies on *Mozingo v. Correct Mfg. Corp.*'s holding that to be subject to personal jurisdiction, an individual defendant must have been the "guiding spirit" of the corporation's wrongdoing, 752 F.2d 168, 174 (5th Cir. 1985).  This reliance is misplaced because here, Plaintiffs *do* allege that she was the "guiding spirit" behind the fraudulent conduct.  Indeed, as point person for the Stanford account, Plaintiffs allege she was primarily responsible for provision of the allegedly fraudulent safety and soundness letters.  *See* TAC ¶ 64.

Second, Baranoucky relies on *Zubarik v. Rubloff Dev. Grp.*, 2006 WL 842368, at *2 (N.D. Tex. 2006), and *Saktides v. Cooper*, 742 F. Supp. 382, 386 (W.D. Tex. 1990), for the proposition that to overcome the fiduciary shield, Plaintiffs must allege she benefitted personally in some way.  However, this requirement departs from the standard articulated by the majority of courts in this circuit which, as discussed, require only an allegation of tortious conduct against the corporate officer in her individual capacity.  Given the authority in this circuit holding that allegations of fraud or tortious conduct against a corporate officer preclude reliance on the fiduciary shield, the Court declines to follow *Zubarik* or *Saktides*.

Finally, Baranoucky argues, based on *Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999), that she did not direct tortious conduct in to Texas.  Plaintiffs allege Baranoucky directed her tortious conduct at the forum state by sending the safety and soundness letters into Texas for distribution to investors.  The Court thus finds the fiduciary shield doctrine inapplicable because Plaintiffs allege Baranoucky committed intentionally tortious conduct directed at Texas.  Accordingly, the Court finds she has sufficient minimum contacts with Texas to support a prima facie case for personal jurisdiction.

### 2. The Exercise of Jurisdiction Does Not Offend Notions of Fair Play and Substantial Justice. – In making this determination, the Court considers five factors:

> (1) the burden on the defendant having to litigate in the forum; (2) the forum and state's interests in the lawsuit; (3) the plaintiff's interests in efficient resolution of controversies; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies

*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citing *Ruston Gas Turbines v. Donaldson Co., Inc.*, 9 F.3d 415, 421 (5th Cir. 1993)).  The Court finds that the factors support personal jurisdiction in Texas.  This Court has a strong interest in this lawsuit because it is intimately related to the Stanford Receivership, over which this Court presides, and which stems from a Ponzi scheme developed and perpetrated from within Texas.  Second, Plaintiffs' interests weigh in favor of their selected forum.  And finally, jurisdiction in Texas advances the efficient resolution of this case in a forum that already has a significant amount of experience with the operative facts of this case.  While the Court does not

diminish the burden on Baranoucky of having to litigate here, due consideration of the applicable standards support this Court's exercise of jurisdiction over her.

### III. DEFENDANTS' 12(B)(6) MOTIONS

#### A. The Legal Standard

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pled facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most

favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted ... to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### B. BMB's Blanket Defenses

#### 1. The Court Rejects BMB's Defense Based on the Stanford Disclosure Statements.

– BMB argues Plaintiffs' claims are barred as a matter of law because CD investors were

required to sign subscription agreements acknowledging receipt of certain disclosures, one of which stated that the Stanford CDs were not insured.  *See* Supplemental Br. Supp. BMB Mot. Dismiss 6–10 [202].   BMB cites a number of cases which generally hold that representations are not actionable if they conflict with statements made in a written offering document.  *See, e.g.*, *Phillips v. LCI Int'l*, 190 F.3d 609, 617 (4th Cir. 1999); *Porter v. Shearson Lehman Bros., Inc.*, 802 F. Supp. 41, 57–58 (S.D. Tex. 1992).

The Court rejects BMB's arguments at this stage because they seek to dispose of factual questions inappropriate for resolution on a motion to dismiss.  A number of decisions BMB cites were based on motions for summary judgment and necessarily resolved factual questions in reaching their decisions.  *See, e.g.*, *Davidson v. Wilson*, 973 F.2d 1391, 1401–02 (8th Cir. 1992) (considering on appeal of a motion for summary judgment whether the evidentiary record supported a finding of justifiable reliance); *Porter*, 802 F. Supp. at 57–58 (considering on motion for summary judgment whether facts surrounding the issuance of investment prospectuses could support justifiable reliance).  Here, there are too many factual issues surrounding the manner of distribution of the disclosure statements, including which investors received the statements and in what format, to support a dismissal of Plaintiffs' claims.[2]  *Cf. Schlumberger Tech Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997)

---

[2]BMB directs the Court to filings in *SEC v. SIPC*, Civil Action No. 12-5286 (D.C. Cir. 2012), for support that the Stanford Investors received copies of the subscription agreements and disclosure statements.  Notwithstanding this Court's reluctance to rely on contextual statements made in different proceedings before different courts, the documents BMB relies on hardly extinguish questions more appropriate for resolution at the summary judgment stage, such as who received the disclosures and when.

(concluding on the evidentiary record that written disclaimers precluded reliance, but emphasizing "that a disclaimer of reliance . . . will not always bar a fraudulent inducement claim."). The Court declines to grant dismissal based on the disclosure statements.

**2. The Court Rejects BMB's Timing Arguments.** – The Court also rejects BMB's argument that because its final insurance coverage letter expired in 2004, it cannot be held liable to investors who reinvested or first purchased their CDs subsequent to the expiration date. *See* Supp. Br. Support BMB's Mot. Dismiss 2–6. BMB points to Plaintiff Gilly-Flores in particular, who did not purchase Stanford CDs until 2007. TAC ¶ 146. The Court declines to grant dismissal on this basis.

Plaintiff Gilly-Flores's claims survive because they do not necessarily require that she personally relied on BMB's alleged misrepresentations. Gilly-Flores brings claims for (1) aiding and abetting violations of the TSA and (2) aiding and abetting participation in a fraudulent scheme.[3] BMB appears to argue that the "substantial assistance" requirement of an aiding and abetting claim cannot be met here where investors made purchase decisions after BMB ceased providing coverage letters.[4] *See* Br. Support BMB's Mot. Dismiss 23 [145]. But BMB ignores that Plaintiffs' complaint relies on more than the individual deception each Plaintiff allegedly suffered. Rather, Plaintiffs' complaint alleges the

---

[3]Gilly-Flores also maintains a claim for civil conspiracy. However, because that claim will be dismissed on other grounds, it is not considered here.

[4]Aiding and abetting claims in Texas require that the defendant have rendered "substantial assistance" in the commission of the underlying tort. *Juhl v. Airington*, 936 S.W.2d 640, 644 ( Tex. 1996).

existence of a broader marketing scheme, which BMB allegedly provided assistance in constructing, that sustained the growth and success of the underlying Stanford Ponzi scheme. Framed this way, Gilly-Flores's claims remain intact because they allege injury stemming from a marketing scheme that BMB provided substantial assistance in building.[5]

### C. The Class Causes of Action

Plaintiffs bring class claims for (1) primary violation of the TSA; (2) aiding and abetting violations of the TSA; (3) participation in a fraudulent scheme; and (4) civil conspiracy.

### 1. The Court Dismisses Plaintiffs' Claims for Primary Violation of the TSA. – The

Court grants Defendants' motions to dismiss Plaintiffs' class claims for sale of securities through untruths or omissions in violation of Article 33A(2) of the TSA.  As more extensively discussed in this Court's December 5, 2014 Order 21–23 [64], *in Janvey v. Willis*, Civil Action No. 3:13-CV-3980-N (N.D. Tex. filed Oct. 1, 2013) (the "*Janvey v.*

---

[5]For the same reasons, BMB's broader argument as to Plaintiffs who reinvested after BMB ceased providing brokerage services also fails.  Moreover, in addition to the reasoning above, Plaintiffs who did purchase CDs during the time period in which BMB acted as insurance broker allege that they continued to rely on BMB's representations even after BMB ceased providing coverage letters.  *See, e.g.*, TAC ¶ 139.  These Plaintiffs' claims thus survive based on the theory of liability discussed in connection with Gilly-Flores, and based on allegations of individual reliance.

*Willis* Order"),[6] Defendants do not qualify as "sellers" under the TSA.   Accordingly,

Defendants can not be held liable as primary violators of the TSA.

### 2. The Court Denies Dismissal of Plaintiffs' Claims for Secondary Violations of the

**TSA.** – Defendants seek dismissal of Plaintiffs' claims for aiding and abetting: (1) the sale

of unregistered securities; (2) the sale of securities by unregistered dealers; and (3) the sale

of securities through untruth or omission.   Additionally, Defendants seek dismissal of

Plaintiffs' claim for co-conspirator liability under the TSA.

A number of Defendants' arguments are substantively the same as those addressed in

the *Janvey v. Willis* Order and can accordingly be summarily rejected pursuant to reasoning

expounded upon there.   Accordingly, the Court holds (1) the TSA applies extraterritorially,

*see id.* at 19–21; (2) Plaintiffs adequately plead fraudulent intent as to their claims for

secondary violation of the TSA, *see id.* at 23–24;[7] (3) Plaintiffs have standing to assert

registration-based claims under the TSA, *see id.* at 24; and (4) Plaintiffs' claims for sale of

unregistered securities are not preempted by the National Securities Markets Improvement

---

[6]This Order will continue to refer to the *Janvey v. Willis* Order, which addressed a number of the arguments raised here.  Portions of the *Janvey v. Willis* Order that will be referenced rely on factual allegations contained in the active complaint in *Janvey v. Willis*. If the portions of the *Janvey v. Willis* Order referenced here rely on allegations from the complaint in that action, this Order will note where the analogous allegations may be found in the TAC.  Subsequent references to the same portion of the *Janvey v. Willis* Order continue to incorporate the relevant allegations from the TAC.

[7]The factual allegations relied on in the *Janvey v. Willis* Order are reiterated in the TAC.  *See* TAC ¶¶ 94, 174, 181.

Act ("NSMIA"), *see id.* at 24–25.[8]  Accordingly, the only novel defenses asserted here are that Plaintiffs' TSA claims are time barred, and that co-conspirator liability under the TSA is not a cognizable claim.[9]

The Court declines to dismiss the TSA claims based on limitations.  Generally, it is inappropriate to grant a Rule 12(b)(6) dismissal based on limitations.  *See, e.g.*, *Bowman v. Sanofi-Aventis U.S.*, 2009 WL 5083431, at *3 (W.D. Tex. 2009) (citing *Abdul-Alim Amin v. Universal Life Ins. Co.*, 706 F.2d 638, 640 (5th Cir. 1983)).  "A statute of limitations may support dismissal pursuant to Rule 12(b)(6) when it is evident from a plaintiff's pleadings that the action is time-barred and the pleadings fail to set forth or raise some basis for tolling the statute."  *Glover v. Raytheon Co.*, 2013 WL 5744361, at *3 (N.D. Tex. 2013).  BMB argues that because it ceased providing coverage letters in 2004, a number of Plaintiffs' claims are barred by the three and five year statutes of repose found in TSA articles 581-33H(1) and 581-33H(2).  TEX. REV. CIV. ST. ANN. arts. 581-33H(1), 581-33H(2).

The Court rejects this defense.  As Plaintiffs point out, the statutes of repose bar claims brought, depending on the provision, more than three or five years after *the sale*, not more than three or five years after the defendant's last act in aid of the sale.  TEX REV. CIV. ST. ANN. art. 581-33H.  As discussed above, Plaintiffs' complaint alleges BMB substantially

---

[8]The factual allegations relied on in the *Janvey v. Willis* Order are reiterated in the TAC.  *See* TAC ¶ 21.

[9]Because the Court grants dismissal of the claim for TSA co-conspirator liability, it expresses no opinion as to whether co-conspirator liability is a cognizable claim under the TSA.

assisted in the creation and growth of the Stanford marketing scheme.  Plaintiffs allege the Stanford scheme's success was due in large part to BMB's letters, even after BMB ceased providing them.  Thus, the crucial date for application of the statutes of repose is not the last date on which BMB's letters were active, but rather the last date on which Stanford sold a CD.  Because BMB's limitations argument fails to account for this rendering of Plaintiffs' case, dismissal on this basis is inappropriate.

*3. The Court Dismisses Plaintiffs' Claim For Co-Conspirator Liability Under the TSA.* **–** As discussed more fully in the *Janvey v. Willis* Order, Plaintiffs fail to allege scienter sufficient to state a claim for conspiracy.  Although Plaintiffs allege Defendants had fraudulent intent from conception, *see* TAC ¶ 94, this conclusory allegation is unsupported by the remainder of Plaintiffs' factual allegations which instead tend to indicate Defendants' gradually increasing awareness of impropriety.  Plaintiffs fail to plead facts suggesting that Defendants were aware of and had the specific intent to accomplish an unlawful purpose from the moment of combination with Stanford.  *See Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995).  Accordingly, to the extent conspiracy to violate the TSA is a standalone claim, the Court dismisses it.

*4. The Court Denies Dismissal of Plaintiffs' Claims for Participation in a Fraudulent Scheme.* **–** Once again, the Court relies on the analysis conducted in the *Janvey v. Willis* Order to conclude that Plaintiffs adequately state a claim for participation in a fraudulent scheme.  Plaintiffs adequately plead Defendants' fraudulent intent, *see Janvey v.*

*Willis* Order at 23–24 & n.4, justifiable reliance, *see id.* at 29-30,[10] and causation, *see id.* at 6. Accordingly, the Court denies dismissal of Plaintiffs' claims for participation in a fraudulent scheme.

*5. The Court Dismisses Plaintiffs' Claims for Civil Conspiracy.* – As discussed above and at greater length in the *Janvey v. Willis* Order, Plaintiffs fail to allege Defendants had the requisite intent from the moment of combination or agreement with Stanford to accomplish an unlawful purpose. *See id.* at 11–13. Accordingly, the Court dismisses Plaintiffs' civil conspiracy claims.

### D. The Individual Causes Of Action

In addition to their class claims, Plaintiffs Troice, Diaz, Punga, Canabal, Ferreiro, and Promotora also plead the following claims in their individual capacities: (1) misrepresenting the benefits of insurance policies in violation of Insurance Code § 541.051(1); (2) misrepresenting the name or title of insurance policies in violation of Insurance Code § 541.051(4); (3) false information and advertising in violation of Insurance Code § 541.052; (4) misrepresentation of a policy of insurance in violation of Insurance Code § 541.061; (5) common law fraud; (6) negligent misrepresentation; (7) negligence/gross negligence; and (8) negligent retention/negligent supervision.

*1. The Court Denies Dismissal of Plaintiffs' Insurance Code Claims.* – Defendants here assert the same arguments against the Insurance Code claims as were made and rejected

---

[10]The factual allegations relied on in the *Janvey v. Willis* Order are reiterated in the TAC. *See* TAC ¶¶ 139–157.

in the *Janvey v. Willis* Order.  Pursuant to the reasoning in that Order, the Court holds that (1) the Insurance Code may apply extraterritorially here, *see Janvey v. Willis* Order at 25–26;[11] (2) Plaintiffs have adequately plead actionable misstatements and omissions, *see id.* at 27–29;[12] and (3) Plaintiffs have standing to assert claims based on the Insurance Code, *see id.* at 26–27.  Accordingly, the Court denies dismissal of Plaintiffs' Insurance Code claims.

### *2. The Court Denies Dismissal of Plaintiffs' Common Law Fraud Claims.* – Based on the reasoning of the *Janvey v. Willis* Order, the Court holds Plaintiffs have sufficiently plead fraudulent intent, *see id.* at 12–13,[13] actionable misstatements and omissions, *see id.* at 27–29, justifiable reliance, *see id.* at 29–30, and causation, *see id.* at 6, to survive the motions to dismiss their common law fraud claims.

### *3. The Court Denies Dismissal of Plaintiffs' Negligent Misrepresentation Claims.* – Based on the reasoning of the *Janvey v. Willis* Order, the Court holds Plaintiffs have sufficiently plead actionable misstatements and omissions, *see id.* at 27–29, justifiable reliance, *see id.* at 29–30, the existence of a duty owed to Plaintiffs, *see id.* at 30–31, and causation, *see id.* at 6, to survive the motions to dismiss their negligent misrepresentation claims.

---

[11]The factual allegations relied on in the *Janvey v. Willis* Order are reiterated in the TAC.  *See* TAC ¶¶ 29–30, 79–81.

[12]The factual allegations relied on in the *Janvey v. Willis* Order are reiterated in the TAC.  *See* TAC ¶ 96.

[13]The factual allegations relied on in the *Janvey v. Willis* Order are reiterated in the TAC.  *See* TAC ¶¶ 50, 57.

***4. The Court Denies Dismissal of Plaintiffs' Negligence/Gross Negligence Claims.***
– Based on the reasoning of the *Janvey v. Willis* Order, the Court holds Plaintiffs have sufficiently pled fraudulent intent, *see id.* at 12–13, the existence of a duty owed by Defendants, *see id.* at 30–31, and causation, *see id.* at 6, to survive the motions to dismiss their negligence/gross negligence claims.[14]

***5. The Court Denies Dismissal of Plaintiffs' Negligent Retention/Negligent Supervision Claims.*** – Plaintiffs allege both Winter and Baranoucky were engaged in the preparation of the fraudulent coverage letters, *see* TAC ¶¶ 64, 75, and that BMB and Willis respectively knew or should have known of this conduct, *id.* ¶ 199. Based on these allegations, the Court holds Plaintiffs have sufficiently pled facts supporting claims for negligent retention/negligent supervision. Moreover, pursuant to the reasoning of the *Janvey v. Willis* Order, the Court finds Plaintiffs have also pled causation. *See Janvey v. Willis* Order at 6.

## IV. BMB's Motion To Stay

BMB moves to stay the action against Winter, a BMB employee and former director of SIBL. BMB is correct that the Court's Receivership Order enjoins litigation against Winter. *See* Second Amended Order Appointing Receiver 8–9 [1130], *in SEC v. SIB*, Civil Action No. 3:09-CV-298-N (N.D. Tex. filed Feb. 19, 2009) ("Receivership Order"); *see also* Sept. 9, 2014 Order 6–8 [42], *in Rishmague v. Winter*, Civil Action No. 3:11-CV-2024-N

---

[14]*See also* December 8, 2014 Order 11 n.3 [125], *in Turk v. Pershing LLC*, No. 3:09-CV-2199-N (N.D. Tex. filed Nov. 18, 2009) (explaining differing conclusions as to negligence claims in the *Willis* actions, and the *Turk v. Pershing* action).

(N.D. Texas filed Apr. 11, 2011).  One primary factor commands a different result than was reached in *Rishmague*.  This action, in contrast to *Rishmague*, will proceed in this forum, where the Court and the Receiver may oversee it and monitor any potential risk to the Receivership estate.  Indeed, the Court's Receivership Order applies differently to actions filed in this Court, and actions filed elsewhere.  *See* Receivership Order 8–9.  At this stage, in this forum, the Court finds the risk to the Receivership Estate inherent in this action minimal and lifts the litigation stay so that the action can proceed against Defendant Winter. The Court also denies BMB's request to stay discovery.  This action has been pending for an extended period of time, and the Court declines to delay its progress any more at this stage.

CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Defendants' motions to dismiss.  The Court dismisses Plaintiffs' claims for primary violations of the TSA. The Court dismisses Plaintiffs' claims for co-conspirator liability under the TSA.  The Court dismisses Plaintiffs' claims for civil conspiracy.  The Court denies Defendants' motions in all other regards.  Given the duration of this litigation and Plaintiffs' previous amendments to the complaint, the Court denies Plaintiffs leave to replead.

Signed December 15, 2014.

David C. Godbey
United States District Judge